FILED
CLERK
10/3/2024 10:50 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, Plaintiff, | Docket# 23-cv-03214-KAM-AYS |
| - versus - | U.S. Courthouse<br>Central Islip, New York |
| GIBSON & CUSHMAN CONTRACTING LLC et al., Defendants | September 30, 2024<br>1:40 p.m. |

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Plaintiff:**

**Charles E. Murphy, Esq.**
Lennon, Murphy & Phillips, LLC
1599 Post Road E
Westport, CT 06880

**For Defendants:**

**Glenn P. Warmuth, Esq.**
Stim & Warmuth, P.C.
2 Eighth Street
Farmingville, NY 11738

**Eric A. Portuguese, Esq.**
Lester, Schwab, Katz & Dwyer
120 Broadway
New York, NY 10271

**Transcription Service:**

**Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

THE CLERK: ...3214, *Travelers Property Casualty Company of America v. Gibson & Cushman Contracting LLC et al.*

Please state your appearances for the record.

MR. MURPHY: Good morning, your Honor. My name is Charles Murphy for the plaintiff, Travelers Property Casualty Company of America.

THE COURT: Good afternoon.

MR. PORTUGUESE: Good afternoon. My name is Eric Portuguese and I am appearing for defendant Allied World.

MR. WARMUTH: Good afternoon, your Honor. Glenn Warmuth; Stim & Warmuth, PC for defendants Gibson & Cushman and H&L.

THE COURT: Good afternoon, everyone.

ALL: Good afternoon.

THE COURT: I feel like you should be sitting separately or you should be sitting over there. Something.

All right. So we've got motions on discovery here and I know that Travelers had made discovery requests, Allied responded essentially not producing things or there's maybe one issue on one document on privilege.

But setting that aside, let's talk about

Travelers' request, and I'll let Travelers start. Tell me what you want and why it's within the scope of discovery. And if you're more comfortable seated, you can stay seated. I know sometimes lawyers can't do that. It's just important you speak into the mic because there's no court reporter, but it is all recorded.

MR. MURPHY: Thank you very much, Judge. And I'll dispense with the background unless you want it, okay?

THE COURT: No, I got it.

MR. MURPHY: I figured. So this is a declaratory judgment action, Travelers against the insured for late notice. You know that.

THE COURT: Right.

MR. MURPHY: One of the big issues here is prejudice by the delay in time. Okay? It's Hornbook law.

In preparing for this argument, I think the best way to look at it is let's just imagine this case didn't involve the intervener Allied. Let's just say it was Travelers against the insured. Okay? I have to prove prejudice. And even if Allied wasn't here, I can't speak for Mr. Warmuth, but I think he'd agree we would be serving subpoenas on Allied for their investigative files and their claim files not because this case is concerned

with Allied's coverage obligation. It's not. There's no claim for Allied's coverage here. Had to do with how was Travelers prejudiced or not prejudiced. Okay?

THE COURT: And that's you defending yourself in this action.

MR. MURPHY: Yes. We are the declaratory judgment plaintiff but --

THE COURT: Right.

MR. MURPHY: Yeah. So I'm usually sitting at the other table, but that's fine.

THE COURT: Right.

MR. MURPHY: So to answer your question, it had to do with prejudice. I'll try to be concise, but here's the thing. You probably read in these letters, okay, at some point, and the action happened more than five years ago and summary judgment has already been granted against the defendants. And then we find out at some point it popped out there's an allegation from Allied in the Supreme Court that this accident happened on a barge. I'm sure you've seen that. Okay? I trust my brother counsel. I'm sure it's true. But Judge, if you asked me Mr. Murphy prove that this happened on a barge, I couldn't. I don't have a photograph, I don't have a vessel number, I don't have documentation, I don't know who owns it.

You may say so what? It matters. I'm an admiralty attorney. Okay? And we issued maritime policies, a PI policy, and an MGL policy. Okay? The type and the identity of the vessel is of paramount importance.

Now, I don't think anybody could argue I don't know it because we didn't get to investigate the claim. Had I been called at 6 in the morning and said Murphy, investigate, I would have with the marine surveyor. We would have gotten all this. Unfortunately, we were unable to but Allied was I think.

I need to know, among other things, I need to know about this vessel. If you want my whole career, it's interesting. Okay? If this is an ocean going vessel, which I don't know if it is, if this is an ocean going vessel, it changes the complete analysis as to coverage. Okay?

There's a case that we cited in our complaint, it's called *New York Marine* and it's a recent case, Judge Carter over at the southern district. Basically says if you have an ocean going vessel, the traditional New York rule about no prejudice applies. You know what I'm saying? So if it's an ocean going vessel, it matters. So I don't have to prove prejudice at all. Okay?

If it's not an ocean going vessel, then you go

to a different standard. You go to New York insurance law. Right? Where here there's an irrebuttable presumption of prejudice because there's already been a judgment issued against the insured. Okay?

Now, I was just having a nice conversation with my brother counsels here. That judgment has just been appealed by I guess at the Second Department and we don't know how it's going to come down.

But just for the sake of argument, say that judgment is reversed. Okay? Then I need to prove prejudice. So I need to know, you know, what kind of barge it was and that'll tell me, for example, which policy might apply. The P&I policy had the schedule of vessels. It has to be listed. I don't know which vessel it is. I don't think Mr. Warmuth knows either. It's not an academic exercise. I need to know what vessel this is. And because I wasn't able to investigate it, I need Allied's investigation file.

THE COURT: And you didn't know anything about this case until after summary judgment.

MR. MURPHY: Not a thing. It's for the Court to determine but as we're preparing -- Allied knew about this barge issue long before they told us. And this goes to the other part. Okay? We need to know about the facts in the investigation.

THE COURT: Right. We don't know what they knew or what they didn't know.

MR. MURPHY: Right.

THE COURT: And you certainly don't know because you weren't there --

MR. MURPHY: No, ma'am. No ma'am.

THE COURT: -- until five years after the incident, four years after the lawsuit, after summary judgment. And then you find out that there's an allegation that your client has to cover. Right?

MR. MURPHY: Yes, ma'am. And let's go further. Okay? I need to know about the defense in the underlying action. I don't want to be too colloquial, but why in God's green earth did they not file a limitation of liability suit within six months of finding out about this loss? Any admiralty practitioner knows that under the correct circumstances a vessel owner can limit its liability to the value of the vessel after the casualty. Full stop. It happens in the eastern district every day. That was never done. I can tell you we weren't able to do it because we didn't know about it. I need to know why that wasn't done, why the bad decisions that Allied made were made. Okay?

Even worse, we talk about the summary judgment motion which you deal with all the time. In Allied's

defense in the underlying action, they inserted in their undisputed statement of material facts, they planted the fact that this accident happened on a barge. The plaintiff there didn't suggest it. Allied planted it there. What possible relevance would that have to do with the underlying case? I don't know. Maybe it's harmless. But maybe, just maybe Allied was trying to steer the defense more towards a position of no coverage because there's a watercraft exclusion in their policy. Because otherwise, the barge has no relevance in the state court action.

I don't know. But I can tell you whether they're a or not, and I believe Mr. Warmuth is going to ask for the same thing, we're entitled to know those facts. And I don't need to tell the Court about the literal discovery policy. I don't need to go into that. But they have made a horrendous mistake, I mean a monumental mistake. And if I was Allied, I wouldn't want that to see the light of day either. But they don't get to make that call. All right? They're trying to hide it. They haven't proved -- you know, they've moved for a protective order. They haven't met their burden in that respect. But those I think are the biggest things. We didn't get to investigate so we don't know.

The way I see it, Allied as against us has made

a straw man argument which is to say they're saying Travelers is arguing something we're not. Okay? We are not concerned in this action whether or not Allied has to cover it or not. Okay? They keep saying we're not -- there's no claim. Period.

They have made against us a monetary damage claim. You've seen it. They want us to cover the legal fees. Okay? I'm new to the case. How did the case get this far off the rail? If Travelers had handled this, the case would have been settled and done. Trial in the underlying case has been adjourned several times but it is a mess. It is an absolute mess.

THE COURT: Only as to prejudice to you.

MR. MURPHY: Again, it's in their files. And just the claim files and the documents related to the claim.

THE COURT: Right.

MR. MURPHY: And the last thing I'll say, I'm trying to think about their arguments, there is no prejudice here. When Allied started saying Travelers, take over this defense, it did a few things. They wrote to the insured, they said we're walking away. Good luck. They did this. I've never seen anything in my life. Fortunately, I know the judge didn't let them out of the case. They said hey, Travelers, this is yours. They

started copying us on all the communications from defense counsel.

THE COURT: You're talking about Allied leaving the state court action after they lost summary judgment?

MR. MURPHY: Yes, ma'am.

THE COURT: Okay. Go ahead.

MR. MURPHY: So my point is I didn't ask for them, but I'm receiving all of their communications from the defense counsel in the underlying case. Travelers was copied on all of them.

So the idea that we're entitled to some of those privileged communications but not all of them at Allied's discretion respectfully doesn't pass the salt test at least to me. If there is a privilege, it seems to me it's Mr. Warmuth's privilege. It's not Allied's.

If it's okay, I'll just check my notes, but I think those are the main points.

Oh, again straw man. We're talking about -- they talk about an order from Judge Matsumoto and there is no order. It's one of these things, is it gaslighting? There is no order. You can check the docket.

THE COURT: No, I have checked it. So you're talking about the April order?

MR. MURPHY: Yes, ma'am.

THE COURT: And that was -- and with you, I read that and what she talked about and they talked about oh, well we want to intervene for some limited purpose but not for a purpose that will destroy adversity. And then you turn around, there's a stipulation. But there's no order limiting discovery. and I just want to be clear on that, at all.

MR. MURPHY: That's correct, your Honor. And to be honest --

THE COURT: The district judge never made that order and --

MR. MURPHY: It kind of hurts my head because Allied intervened. I mean I didn't want them in the case, but they intervened. Judge Matsumoto was inclined to let them in. So we said fine, that's great, but you can't intervene and then dictate how you're going to respond to discovery. You know, you're in or you're out.

But with that all said, and I'll just go back and really to wrap it up, the best way to look at this is if Allied was a non-party, we're still entitled to this relevant information.

THE COURT: You would subpoena them for the information.

MR. MURPHY: Yes, ma'am.

THE COURT: Yes. No question about it.

MR. MURPHY: Thank you.

THE COURT: Okay. Thank you. I guess we'll hear from Allied.

MR. PORTUGUESE: Good afternoon, your Honor. First, I would say that the mention of the need to know the vessel, they can get that from the underlying action. Everything was filed there. And they can get that from the insureds who had the direct information. They should know what barge they had. They don't need that from us.

But there is no order. We're not relying on an order and I don't think our letters said the order. There was just -- the conference where the judge said you can't intervene because you're not diverse from your own insureds, and that means that our coverage is not at issue in this case. The only issue is Travelers' coverage and our claim for contribution from them.

They claim that we mishandled the underlying defense and it seems to me the only issue -- that's not a real defense because they have to -- they just said we mishandled the case. They have to prove bad faith and there's no allegations of bad faith here. I haven't heard any and I haven't seen anything in their pleadings.

For our purposes, the only thing that's relevant to Travelers is our defense bills. If those defense bills are reasonable, they have to pay them

assuming we win. And if they win, it's irrelevant. But they can't go and claim that they need our claim file. They just need the bills. Are they reasonable or are they not reasonable? That's it.

THE COURT: Because you're assuming they're covering. You're assuming that they have to cover just because you say so.

MR. PORTUGUESE: Right, because that's -- but that's the dispute. Is the Travelers policy applied or not? And it seems to me that at least one of the Travelers policies applies to -- doesn't have a schedule as far as I know. So the type of vessel doesn't matter to Travelers. They have coverage if delayed notice defense is defeated and they've argued and they know that if the appeal is reversed their prejudice presumption falls by the wayside.

So I guess what I'm saying is I think we need some direction as to the scope of discovery.

THE COURT: Yes, that's what you're here for.

MR. PORTUGUESE: Right. And I think --

THE COURT: And I think you're arguing that the scope of discovery is exceedingly narrow and you're essentially saying we're not giving them anything except our bills. And to the extent they want something else, they could get it from Gibson.

MR. PORTUGUESE: That's right. And the underlying case. There's a full record there. They can get it there too.

THE COURT: Which your company developed but they just have to take your word for everything and --

MR. PORTUGUESE: No, no --

THE COURT: -- they're not entitled to look at your file at all according to you.

MR. PORTUGUESE: The identity of vessels and the underlying, it's in the record. They don't need us to give it to them. They can get it themselves. It's a public record.

THE COURT: Let me ask Travelers to respond to that. And also to respond to the argument that all you need is the bills, that's all.

MR. MURPHY: Thank you. I talk about the vessel identity. It's nowhere else as far as I'm aware. I wouldn't lie to the Court. You have my word. We've asked the insureds. They don't know.

THE COURT: I mean isn't that just one example of what you're looking for?

MR. MURPHY: It's an example, exactly. But I thought it was a poignant example.

The part about the bills, and I tried to make this argument earlier, maybe I'll make it more effective

now, is how did we get to this point? So for example, I read their counterclaim again today. They want Travelers to take over, and I appreciate this, paying defense bills as of the time that we were notified. Okay? So it's not back to whatever it was, 2017.

The way I look at this is how did we get here? We should have -- there should be nothing left. If they had settled the claim, okay, they could have come back to Travelers and that would have just been insurance company on insurance company. No problem. Okay? But my suspicion is that the way it was handled was to posture Allied to a position of no coverage. I've seen it before. You know? That's why they put the part about the barge in their motion papers. That's the only possible reason to prove the watercraft exclusion.

I don't think the case should have gotten this far. And if I'm right that the underlying case should never have gotten this far, then I don't think Travelers, I don't think there's a basis for Travelers to be on the hook, you know, for the ongoing defense of the underlying action because this should have been resolved a long time ago. It's not a complicated case. I mean summary judgment has already been -- and I think I can say this, it's not privileged, I don't think there's been any settlement offers by Allied for all these years. I mean

how is that possible?

So no, it's not enough to say Murphy, here are some attorney fees, pay them without question. We are not a guarantor. That's not how it works. The statute works to prevent fraud. That's what it is.

Again, I'm not playing dumb. We don't know what happened.

THE COURT: Right.

MR. MURPHY: And to the extent that I'm limited to the court record, again, that's not how it works.

The last thing I will say is it's funny, Allied had demanded our claim file. Okay? We turned it over. So what's good for the goose is good for the gander. We turned over our claim file. If they didn't think it was appropriate, certainly they wouldn't have asked for it. Right? Thank you, Judge.

MR. PORTUGUESE: Judge, could --

THE COURT: I'm going to give you one more chance and I'll get counsel also.

MR. PORTUGUESE: Sure. So we're entitled to their claim file because their coverage is at issue. They're not entitled to our claim file because our coverage isn't at issue as conceded because there's no diversity between Allied and the insureds.

But he's making the point that if we had

settled the claim, we wouldn't have defense costs. They have no right to say that. They've denied coverage. They can't say well you should have settled. We don't have to settle anything.

THE COURT: Nobody asked them for coverage until after summary judgment. Right?

MR. PORTUGUESE: That's right. But that goes to prejudice. That doesn't go to the discovery is what I'm trying to say. Okay? Because --

THE COURT: Discovery is broader, right? If they're making an argument on prejudice, discovery is certainly broader here.

MR. PORTUGUESE: Right. But they're basically saying we should have settled the claim. And I think they don't have any right to tell us that we should settle the claim. We have coverage defenses that we may raise in state court as the district court instructed. You know, if you want to litigate Allied World's coverage, you have to go to state court. You can't do it in this case. So I think that --

THE COURT: So Allied comes in in this awkward position in this case but you say they should go to state court but there's no -- do you want them to bring an action in state court? There's nothing happening in state court to decide the coverage issue because in state

court you just fought with the plaintiff there, lost summary judgment. Now you're waiting for that to be appealed. There's supposedly a trial on damages that hasn't happened and is never going to happen because this case is going to on forever. Right?

MR. PORTUGUESE: Well, the trial is scheduled for October 27th.

THE COURT: And is that going to happen even though there's a pending appeal?

MR. PORTUGUESE: I don't know. Well, I don't know. That's a good question. It's hard to say at this point because it's --

THE COURT: I mean I can't settle that case but you know --

MR. PORTUGUESE: Well, in any event --

THE COURT: -- that's something for you to consider in state court.

MR. PORTUGUESE: -- I just want to make the point that we don't have to -- they can't say we're not going to pay your bills because you didn't settle. That doesn't work.

THE COURT: I don't think that's what they're saying. I think that --

MR. PORTUGUESE: Well, he seemed to suggest that.

THE COURT: I think you're picking little examples that he's making but I don't think that's the broad discovery argument that's being made here.

MR. PORTUGUESE: Right. One last point. If he wants information regarding the vessel, we'll give him that. That's all that's relevant here.

THE COURT: So you'll pick and choose the little pieces of the file that you give him?

MR. PORTUGUESE: Well no, I'm not picking and choosing. He's making an argument as to what he wants and I'm saying I'll give him that but that doesn't mean he gets everything. Okay.

THE COURT: All right. Let me ask you that. What if you just got the identity of the vessel, that number? Is that enough for you?

MR. MURPHY: No, ma'am, it's not. No, your Honor, it's not enough. There's a million reasons I can tell you. We need to know who owns the vessel.

THE COURT: Right.

MR. MURPHY: You know, whether to send it -- there's all kinds of things. The ownership, how it was working, whether it was properly manned. All kinds of things.

THE COURT: Okay.

MR. MURPHY: He is picking and choosing. And

again, this goes to what I said earlier. They don't get to intervene and then decide what they are and are not going to comply with. That's my take. And there are very broad discovery rules. And we're not even talking about admissibility. They just want to keep their mistake from seeing the light of day. I get it. But that's what this is.

THE COURT: Well, let me hear briefly from Gibson.

MR. WARMUTH: Thank you, your Honor. Your Honor, in this matter, Allied World really put my client in a terrible position. They accept coverage, they defend the case for five years, and then upon summary judgment being granted they decide they're going to walk away and pull counsel and leave us with nothing. Now, they were prohibited from doing that but that's what they attempted to do.

And now we have this dispute about who is required to cover the claim. Now, we need -- just as Mr. Murphy said, the issue is going to come down to prejudice and my client is going to have to show there was no prejudice. And how do we show there was no prejudice? We have an affirmative defense which says we had another insurer who took responsibility for the claim. They did exactly what you would have done. They provided counsel

that did exactly what your counsel would have done. And therefore, there is no prejudice to you to step in at this time. In order to do that, I need what I sought in discovery which they will not give me. And they will not give me communications they have with my client's attorney. They give more to Mr. Murphy than to me. I don't have those reports.

MR. MURPHY: True, your Honor.

MR. WARMUTH: So they are communicating with defense counsel, who by the way also won't communicate with me. So I'm left in the dark. They're communicating with everybody and I don't get to know about it. And certainly, if they had not come in and intervened, which they made the choice to do, and in making the choice to do it they became subject to the rules including the broad rules regarding discovery. If they didn't want that, they didn't have to come in. But we would have sought it by subpoena and we would have followed those rules and I think we would have gotten it under those rules.

So we really must know what happened with respect to what they did on this claim so that we can properly litigate with Travelers.

THE COURT: With Travelers. Right.

MR. WARMUTH: Thank you, your Honor.

THE COURT: Right. To different ends but you both need the same documents.

Let me just ask Allied one last question. You know, you make these broad objections, one of which is it's so burdensome. How many pages of documents? What's so burdensome about it? Not that that's -- that would go to proportionality I suppose, but what's so burdensome?

MR. PORTUGUESE: Yeah, I don't think I'm going to rely on that, your Honor.

THE COURT: I don't think you should. All right. I've read the papers, I've read the district judge's hearings, the transcripts of both the hearings. I don't think she intended to limit discovery in any way in this case that's beyond the limits of the Federal Rules of Civil Procedure. I'm going to hold that Travelers and Gibson are entitled to all of the documents that they seek and I'm going to rule that Allied produce those documents within 30 days. Thank you.

MR. WARMUTH: Thank you, your Honor.

MR. MURPHY: Thank you, your Honor.

MR. PORTUGUESE: Thank you, your Honor.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **October**, 2024.

Mary Greco

Transcriptions Plus II, Inc.